

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ACCURATE TRANSMISSIONS, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 04 C 7441 |
| ) | |
| v. ) | Magistrate Judge |
| ) | Martin C. Ashman |
| SONNAX INDUSTRIES, INC., ) | |
| ) | |
| Defendant. ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion of defendant Sonnax Industries, Inc. ("Sonnax"), for summary judgment in its favor on the claims of plaintiff Accurate Transmissions, Inc. ("Accurate"), for breach of warranty and for damages. The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a). For the reasons that follow, the Court grants Sonnax's motion in part and denies it in part.

## I. Background

All facts are undisputed unless otherwise noted. For much of the 1990s and until late in 2004 Accurate purchased from Sonnax various parts that Accurate used in rebuilding torque converters. (Pl.'s 56.1 Statement of Material Facts, ¶ 1.) One of these parts was a stator cap labeled by Sonnax as GM-WP12-OE ("WP12"). (Def.'s Mem. at 1.) According to Accurate, the WP12s Sonnax sold to Accurate were defective and caused the failure of some of the Accurate torque converters. (*Id.*) On November 17, 2004, Accurate filed a complaint against Sonnax

alleging that the WP12s contained defects in design and materials, that the defects caused the WP12s to fail prematurely, and that the WP12s were not merchantable; Accurate argues that all of this constitutes a breach of express and implied warranties. (Pl.'s 56.1 Statement of Material Facts, ¶ 19.)

On March 2, 2006, Sonnax filed the instant motion for summary judgment. Sonnax argues that Accurate's claims that arise from WP12s delivered more than four years prior to the date Accurate filed its complaint are barred by the applicable statute of limitations. (Def.'s Mem. at 6.) Sonnax also argues that warranties contained in Sonnax's catalogs effectively disclaim any implied or express warranties that would otherwise apply. By the presence of these disclaimers, Sonnax argues, Accurate cannot recover consequential or incidental damages and Accurate's remedies are limited to replacement or repair of the defective parts. (Def.'s Mem. at 4-6.) The warranty states in pertinent part:

> Sonnax warrants to the owner that it will repair or replace, at Sonnax's option, each part manufactured or supplied by Sonnax, when that part is found to be defective in material or in factory workmanship, under normal use and service. . . .
>
> THIS WARRANTY IS THE ONLY WARRANTY APPLICABLE TO NEW PARTS MANUFACTURED BY SONNAX, AND IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF.

(McNary Aff. Ex. A, at xii, Ex. C, at 9) (emphasis in original).)

Accurate responds by raising three arguments why summary judgment is not appropriate. First, Accurate argues that the warranty disclaimers are not conspicuous and are therefore ineffective. Second, Accurate argues that the catalogs were not the basis of the parties' bargain,

and that any warranty disclaimer contained in the catalogs was therefore ineffective. Finally, Accurate argues that the terms used in the disclaimer indicate that the disclaimer applies only to "manufactured" parts, meaning that the disclaimer does not apply to the WP12s, which a third party manufactured.[1] (Pl.'s Resp. at 7-14.) Although the Court holds that the disclaimer is conspicuous and the terms of the disclaimer cover the WP12s, a fact issue remains as to whether the catalogs formed the basis of the parties' bargain. For the reasons that follow, the Court grants Sonnax's motion in part and denies it in part.

## II. Discussion

The Court will grant a summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court "considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion." *Aguirre v. Turner Constr. Co.*, 05 C 515, 2006 WL 644009, at *2 (N.D. Ill. Mar. 9, 2006) (citing *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000)). Where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine issue of material fact exists that will preclude a summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[1] As discussed below, Accurate's briefs do not include arguments as to why the statute of limitations would not prevent Accurate from recovering for defective parts delivered prior to November 17, 2000.

Because the issues in this case are state-law contract issues, a federal question does not exist and the basis of the Court's subject matter jurisdiction is diversity. Thus, the Court uses Illinois substantive law in determining whether Sonnax is entitled to summary judgment. *See Devitt v. Ryerson Tull, Inc.*, 05-2308, 2006 WL 1120528, at *3 (N.D. Ill. Apr. 25, 2006) (citing *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000)). The parties do not dispute that Illinois law applies.

### A. Statute of Limitations

Illinois law provides that "[a]n action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued." 810 Ill. Comp. Stat. 5/2-275(1). In a breach of warranty case, the cause of action accrues at the point at which the delivery of the purchased goods is made. 810 Ill. Comp. Stat. 5/20275(2); *Ridle v. Sprayright Mfg. Co.*, 198 Ill. App. 3d 597, 600-01, 555 N.E.2d 1272, 1273-74 (App. Ct. 1990).

Accurate's complaint was filed on November 17, 2004. Therefore, the application of the statute of limitations would prevent Accurate's recovery of any damages from WP12s delivered to Accurate prior to November 17, 2000. Sonnax's brief points out that some of the WP12s were delivered prior to November 17, 2000, (Def.'s Mem. at 6), a fact that Sonnax has admitted, (Pl.'s Resp. to Def.'s 56.1 Statement of Material Facts, ¶ 7), and Accurate's briefs do not include any reason why the statute of limitations should not apply to the pre-November 17, 2000 deliveries. Thus, the Court holds that the statute of limitations prevents Accurate from recovering damages relating to pre-November 17, 2000 deliveries of WP12s.

## B. Whether the Disclaimers Are Conspicuous

When parties contract for the sale of goods, and where the seller of the goods is a merchant, Illinois law implies a warranty of merchantability. 810 Ill. Comp. Stat. 5/2-314(1). In order to be merchantable, the goods "must be at least such as (a) pass without objection in the trade under the contract description; and . . . (c) are fit for the ordinary purposes for which such goods are used . . . ." 810 Ill. Comp. Stat. 5/2-314(2) (inapplicable qualifications for merchantability omitted). The seller may "exclude or modify the implied warranty of merchantability or any part of it" by using language that "must mention merchantability and in case of a writing must be conspicuous." 810 Ill. Comp. Stat. 5/2-316(2). Conspicuousness is defined as follows:

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. . . . Whether a term or clause is "conspicuous" or not is for decision by the court.

810 Ill. Comp. Stat. 5/1-210 (10). The test for conspicuousness in a business transaction is whether a reasonable business person is expected to notice the disclaimer. *See Wheeler v. Phoenix Co. of Chi.*, 276 Ill. App. 3d. 156, 162, 658 N.E.2d 532, 536 (App. Ct. 1995) ("Under the Code, contract language is conspicuous if it is 'so written that a reasonable person against whom it is to operate ought to have noticed it.'" (citations omitted)).

Sonnax cites several cases where a court found that a disclaimer was conspicuous. For example, in *Adams v. American Cyanamid Co.*, the court held that a warranty disclaimer found on page 19 in a 107-page manual was conspicuous. 498 N.W.2d 577, 585-86, 1 Neb. App. 337,

348-49 (Ct. App. 1992). Sonnax also cited cases where courts found that warranty disclaimers in a catalog and a booklet were effective. *See Earl Brace & Sons v. Ciba-Geigy Corp.*, 708 F. Supp. 708, 709-10 (W.D. Pa. 1989) (finding disclaimer on page 5 of booklet conspicuous, where disclaimer appeared in bold "just after the table of contents and just above the directions for use," even though the table of contents did not mention the disclaimers and other circumstances impeded disclaimer's visibility); *Architectural Aluminum Corp. v. Macarr, Inc.*, 70 Misc. 2d 495, 333 N.Y.S. 2d 818, 823 (Sup. Ct. 1972) (finding conspicuous a disclaimer "framed with a heavy black line" and set off of the warranty text by one-inch margins).

The Court notes that none of these cases is binding authority, but collectively they are useful in demonstrating that warranty disclaimers in catalogs—even large catalogs—can effectively disclaim a warranty. Here, in both the 2000 and 2003 catalogs, the warranty disclaimer came directly after and on the same page as Sonnax's warranty policy. The disclaimers themselves are printed in capital letters, unlike the text of the warranty, which is analogous to the Illinois statute's example of a printed heading in capitals as being conspicuous. This is also analogous to the statute's clarification, "Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." 810 Ill. Comp. Stat. 5/1-201. For these reasons, the Court finds that the disclaimers in the 2000 and 2003 catalogs are conspicuous.

A strong counter-argument exists that the disclaimer is not conspicuous in the 2000 catalog. In both the 2000 and 2003 catalogs, the respective catalog's table of contents lists the page on which the reader can find Sonnax's warranty policy. However, in the 2000 catalog, although the table of contents states that the warranty can be found on page xiii, the warranty is

actually placed at page xii. Thus, were a reasonable businessperson to actively search for the warranty policy, the person initially would be directed to the wrong page.

The Court finds that these circumstances do not destroy the conspicuousness of the disclaimer in the 2000 catalog. The catalog's bulk is such that it can only be read with a page and its facing page both open. Thus, a person searching for the warranty policy who turns to look on page xiii on the advice of the table of contents need only glance slightly to the left (to the facing page) to notice that the policy is actually on page xii–a glance that is likely in a situation where the reader is actively looking for the warranty policy. Therefore, the Court finds that the disclaimers are conspicuous. To the extent that the warranties in the 2000 and 2003 catalogs apply, Accurate cannot recover incidental and consequential damages, and Accurate's remedies are limited to repair or replacement of the defective products.

### C. Whether the Catalogs Form the Basis of the Bargain

In its Response, Accurate argues that the catalogs were not a part of the contract between Sonnax and Accurate for the sale of the WP12s. According to Accurate, "the parties had been dealing with each other for years before [Accurate received the 2000 catalog], and their course of dealing was established." (Def.'s Resp. at 7.) Accurate points out the that parties had completed sales beginning in the 1990s, and that the continuing sales were largely repeat orders in which Accurate never referred to the catalogs. Accurate suggests that the contract that was breached (that is, the contract that forms the basis of this case) was the progeny of an order form Accurate completed (i.e., an offer that Sonnax accepted by shipping the WP12s and billing Accurate for

them), (Def.'s Resp. at 8), and that therefore the catalogs did not disclaim any warranty protection.

In order to disclaim the warranties that attached to the sales of WP12s, the 2000 and 2003 catalogs must have formed the basis of the bargain between the parties. *See* 67A Am. Jur. 2d Sales § 759 (West 2006) ("Because the Uniform Commercial Code requirements regarding disclaimer are imposed for the purpose of protecting a buyer from unexpected and unbargained surprises, a limitation or disclaimer of warranties will be given effect only if it formed part of the basis of the bargain when the sales contract was entered into." (citations omitted)). "A limited warranty contained in a manufacturer's catalog may be considered part of the basis of the parties' bargain, so long as the purchaser received the catalog and had an opportunity to read the warranty prior to or at the time of sale." *LWT, Inc. v. Childers*, 19 F.3d 539, 541 (10th Cir. 1994) (citing *Adams*, 498 N.W.2d at 585, 587; *Architectural Aluminum Corp.*, 70 Misc. 2d 495, 333 N.Y.S.2d at 820-21; *Bowdoin v. Showell Growers, Inc.*, 817 F.2d 1543, 1545 (11th Cir. 1987)). The buyer need not have actual knowledge of the disclaimer, so long as the disclaimer is in the buyer's possession at or before the time of the sale. *Id.* (citations omitted). The issue then becomes whether Accurate received the catalogs prior to or at the same time as the formation of the contract at issue. This is a question of fact, which precludes the Court from granting Sonnax's motion for summary judgment. *See id.* ("The question of whether the catalog containing the limited warranty became part of the parties' bargain is ordinarily one of fact for the jury." (citing *Adams*, 498 N.W.2d at 587; *Flintkote Co. v. W.W. Wilkinson, Inc.*, 220 Va. 564, 260 S.E.2d 229, 230, 232 (1979)).

Although the Court cannot grant the motion for summary judgment, the Court can determine as a matter of law whether the contract at issue–assuming that the catalogs were not the basis of the parties' bargain–contains any express or implied warranties. The form that Accurate completed when it ordered the WP12s states:

> Sonnax now offers [WP12], molded from a high performance phenolic resin. This is a significant upgrade when compared to the OEM thrust spacer. This thrust spacer has been redesigned to eliminate failure caused by parts spinning in the stator, as well as parts fracturing, blistering or cracking.

(Pl.'s Supplemental Resp. at 1.) Accurate argues that this language creates an express warranty that the WP12 is a significant upgrade from the prior model, "and that the part had been redesigned to *eliminate* failure . . . ." (Pl.'s Supplemental Resp. at 2 (emphasis in original).)

Under Illinois law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 Ill. Comp. Stat. 5/2-313(1)(a). Some case law suggests that "[a]ffirmations in brochures made during a bargain become express warranties unless clear affirmative proof shows otherwise." (*See* Pl.'s Supplemental Resp. at 2 (citing *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill. App. 3d 1068, 1074, 445 N.E.2d 19, 24 (App. Ct. 1982))).

The Court finds that this language in the order form is not an affirmation of fact but is instead "mere puffery." Statements that boast unverifiably of the quality of a product constitute puffing and will not create express warranties. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 173-74, 296 Ill. Dec. 448, 493, 835 N.E.2d 801, 846 (2005) ("'Puffing' denotes the exaggerations reasonably to be expected of a seller as to the degree of quality of his or her

product, the truth or falsity of which cannot be precisely determined."). Although *Avery* involved puffery in the context of a consumer fraud claim, its reasoning is instructive here. The puffery in *Avery* was the statement that the product was a "quality replacement part." *Avery* cited a string of cases that identified the following phrases as puffery: "high-quality," "expert workmanship," "custom quality," "perfect," "magnificent," "comfortable," "picture perfect." *Id.* at 174, 296 Ill. Dec. at 493, 835 N.E.2d at 846 (citations omitted).

Here, the Sonnax order form states that the WP12 is a "significant upgrade," but it does not clarify specifically what that upgrade is nor what is significant about it. The veracity of "significant upgrade" "cannot precisely be determined." *Id.* at 173-74, 296 Ill. Dec. at 493, 835 N.E.2d at 846. This is analogous to the various statements cited in *Avery*. The form also states that the "spacer has been redesigned to eliminate [specified] failure." (Pl.'s Supplemental Resp. at 1.) This is an affirmation of fact–but it is not an affirmation that the spacer *will* eliminate failure. It is simply a statement that the spacer has been *designed* to eliminate failure. With this in mind, the only fact that Sonnax warrants is that it did actually redesign the stator in this way. This fact is not what Accurate is contesting. Thus, the form did not create an express warranty relevant to the allegations of Accurate's complaint.

The Court next addresses whether, assuming the catalogs were not the basis of the parties' bargain, the form created implied warranties of merchantability. Although Accurate does not raise this argument, Illinois law, as discussed above, implies a warranty of merchantability into every sale of goods by a merchant. Sonnax has presented no argument that this implied warranty would not apply if the catalogs would not have formed the basis of the agreement. Nor can such an argument logically be made. Thus, absent the warranty disclaimer (resulting from the absence

of the 2000 or 2003 catalog as a basis of the sale), the implied warranty of merchantability applies to the sales at issue, leaving Accurate with an avenue of recovery.

Thus, the possibility of Accurate's recovery depends on whether the basis of the parties' agreement was the catalogs or whether the catalogs formed no basis of the agreement. Because this is a factual question, the Court must deny Sonnax's motion for summary judgment.

### A. Terms of the Disclaimer

The warranty disclaimer, repeated above, contains three clauses or sub-parts. The first clause states that the warranty is "the only warranty applicable to new parts manufactured by Sonnax." (McNary Aff., Ex. A, at xii, Ex. C., at 9 (emphasis removed)). The second clause states that "[the warranty] is expressly in lieu of any other warranties, express or implied, including any implied warranty of merchantability or fitness for a particular purpose." (*Id.*) Finally, the third clause states that "[t]here are no warranties which extend beyond the description on the face hereof." (*Id.*)

The Court emphasizes that these three clauses stand alone, and in order to adequately address the parties' arguments, the Court briefly outlines each clause. The first clause, as noted, applies only to parts manufactured by Sonnex. It disclaims all express and implied warranties that would otherwise apply to manufactured parts. It does not purport to waive any warranties that apply to any other, "non-manufactured" parts (e.g., parts supplied by Sonnex). Thus, the issue of whether the first clause has disclaimed warranties covering the WP12s logically turns on whether the WP12s are "parts manufactured by Sonnax."

In addition to the first clause, the second and third clauses also purport to disclaim all applicable warranties. However, the terms of the second and third clauses do not limit these clauses' application only to "parts manufactured by Sonnax." Instead, the second and third clauses disclaim express and implied warranties as to *all* products Sonnax sells. Thus, even if a part were not "manufactured by Sonnax," meaning that the first clause would not disclaim that part's warranties, the second and third clauses nonetheless would disclaim that part's warranties.

With the warranty disclaimer's framework clearly outlined, the Court turns to the parties' arguments. The parties' arguments hone in on the first clause, which, by its terms, applies only to "parts manufactured by Sonnax." The parties' arguments therefore address whether or not the WP12s are considered "manufactured by Sonnax." Accurate argues that the disclaimer does not apply to Accurate's purchase of the WP12s because Sonnax did not actually manufacture the WP12s. Rather, the WP12s "were manufactured by a company in India called Finotex." (Pl.'s Resp. at 13.) Thus, Accurate suggests, Sonnax did not disclaim the implied warranties that applied to the sale of WP12s. (Pl.'s Mem. at 13-14.)

Sonnax responds by arguing that "manufactured" can include Sonnax's actions toward bringing the WP12s to market. Sonnax defines "manufacture" as "to produce according to an organized plan and with division of labor." (Def.'s Reply at 5 (citing Merriam-Webster's Collegiate Dictionary 707 (10th ed. 2001)). Sonnax does not dispute that Finotex is a manufacturer, but Sonnax states that Sonnax is also a manufacturer because it monitored Finotex's actions in manufacturing the WP12s, ensuring that the WP12s were made according to specification and met all quality control standards. (Def.'s Resp. at 6.) Sonnax argues that this

conduct falls within its definition of "manufacture," meaning that the warranty disclaimer under the first clause was effective.

The Court does not agree with Sonnax's definition and application of "manufacture." The Court's primary goal in construing contracts is to give effect to the parties' intent. *See, e.g., Schek v. Chicago Transit Auth.*, 42 Ill. 2d 362, 364, 247 N.E.2d 886, 888 (1969). If possible, the court will infer the parties' intent solely by looking to the contract itself, which must be read as a whole. *See O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 839, 781 N.E.2d 1114, 1119 (App. Ct. 2002).

Here, while the first clause in the warranty disclaimer purports to apply to products manufactured by Sonnax, the warranty itself (in the section that limits the buyer's remedy) purports to apply to "each part manufactured *or supplied* by Sonnax." (McNary Aff., Ex. A, at xii, Ex. C., at 9 (emphasis added).) In using these words, the warranty itself recognizes a difference between parts "manufactured" and parts "supplied," and unless some distinction exists between the two, the "supplied" term is superfluous. The Court is convinced that the better definition of "manufacture" distinguishes between parts Sonnax physically manufactured and parts manufactured by a third party and supplied by Sonnax, even if the third party operates under close scrutiny. If the manufactured/supplied distinction the warranty implies is to have any meaning, the WP12s cannot have been "manufactured" by Sonnex within the meaning of the first clause of the warranty disclaimer. For this reason, the first clause does not disclaim the warranties applicable to the WP12s.

Although the first clause does not disclaim the warranties, the second and third clauses do. The second clause states that the warranties are "expressly in lieu of any other warranties,"

and the third clause essentially states that "[t]here are no warranties which extend beyond the description on the face hereof." (McNary Aff., Ex. A, at xii, Ex. C., at 9.) As discussed above, this language is not limited to parts manufactured by Sonnex, meaning that the second and third clauses apply to all parts—manufactured by Sonnex or simply supplied by Sonnex to the buyer. Thus, the second and third clauses operate as an effective waiver of any warranties that may otherwise apply to the WP12s at issue in this case. Because the second and third clauses disclaim the applicable warranties, Accurate cannot as a matter of law recover damages for defective WP12s, if the basis of the parties' bargain is the catalogs. Thus, the only way Accurate may recover such damages is if the fact finder finds that the catalogs are not part of the basis of the parties' bargain.

### III. Conclusion

For the foregoing reasons, Sonnax's motion for summary judgment is granted in part and denied in part.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: June 14, 2007.

Copies have been mailed to:

| | |
|---|---|
| JAMES E. MAHONEY, Esq.<br>Griffith & Jacobson, L.L.C.<br>55 West Monroe Street<br>Suite 3550<br>Chicago, IL 60603 | STEVEN J. WATSON, Esq.<br>Downs Rachlin Martin, P.L.L.C.<br>90 Prospect Street<br>P.O. Box 99<br>St. Johnsbury, VT 05819-0099 |
| | WILLIAM E. SPIZZIRRI, Esq.<br>Kralovec & Marquard, Chtd.<br>55 West Monroe Street<br>Suite 1000<br>Chicago, IL 60603 |
| Attorney for Plaintiff | Attorneys for Defendant |